## Case No. 16,205.

### UNITED STATES v. RUGGLES.

[5 Mason, 192.] 1

Circuit Court, D. Rhode Island.    Nov. Term, 1828.

SHIPPING — AUTHORITY OF MASTER — "FORCING MARINER ON SHORE" IN FOREIGN PORT.

1. Under the 10th section of the act of 1825, c. 276 [3 Story's Laws, 2001; c. 65, 4 Stat. 117], the forcing a mariner on shore must be done, not only without justifiable cause, but also maliciously, to justify a conviction. If done under a mistaken sense of duty, it is not a case for conviction.

[Cited in U. S. v. Coffin, Case No. 14,824.]

2. "Maliciously" in the statute means, with a wilful disregard of right and duty, or doing the act against a man's own conviction of duty.

[Cited in U. S. v. Coffin, Case No. 14,824; U. S. v. Taylor, Id. 16,442.]

[Cited in Wills v. Noyes, 12 Pick. 328.]

3. A master of a ship has authority to confine his seamen in a common gaol, in a foreign port, for offences and misconduct, in extreme cases, and where the proper correction or punishment cannot be effectual on ship-board.

[Cited in Jordan v. Williams, Case No. 7,528.]

[Cited in Buddington v. Smith, 13 Conn. 336.]

Indictment [against Spencer Ruggles] for maliciously forcing a mariner on shore in a foreign port, contrary to the tenth section of

---

1 [Reported by William P. Mason, Esq.]

the act of 1825, c. 276 [3 Story's Laws, 2001; c. 65, 4 Stat. 117]. Plea, not guilty.

The cause turned principally on matters of fact at the trial.

Mr. Greene, U. S. Dist. Atty.

Pratt & Searle, for defendant.

Upon the summing up to the jury, the following opinion was delivered as to the construction of the statute:

STORY, Circuit Justice. The words of the act of congress are, that "if any master, &c. shall, during his being abroad, maliciously and without any justifiable cause, force any officer or mariner of such ship, &c. on shore, &c. he shall, on conviction thereof, be punished by fine, &c." To constitute the offence, both facts must concur. It is not sufficient, that there is no justifiable cause for the act; it must also be maliciously done. If therefore the jury should come to the conclusion, that there has been no justifiable cause, still they must be satisfied further, that the act has been maliciously done by the defendant. By "maliciously," in the intendment of the statute is not merely meant a wicked, malignant, and revengeful act, such as in cases of murder constitutes malice, and which flows from a heart regardless of social duty, and fatally bent on mischief. But if the act be wantonly done, that is, with a wilful disregard of right or duty, it is, in the sense of the statute, malicious. It must be a wilful act, done contrary to a man's own convictions of duty. If, therefore, the defendant did the act from good motives, and under a mistaken sense of duty, and not from a spirit of hatred, or with an intention to oppress, then he ought to be acquitted, notwithstanding the want of justifiable cause. But if he did the act contrary to his own duty, as a mere exercise of power, without any sense of its being right, then it was "maliciously" done in the sense of the statute. See Harman v. Tappenden, 1 East, 555, 563, and note, and 564, 565, as to the meaning of "maliciously." See, also, 2 Starkie, Ev. tit. "Libel and Malice," pp. 862. 891, etc.; Robertson v. McDougall, 4 Bing. 670, 680; Looker v. Halcomb, Id. 183, 190. as to the meaning of "willfully and maliciously," in St. 1 Geo. IV. c. 56.

There is another point, on which the court is called to express an opinion. In the present case, the master not only forced the seamen on shore, but he caused them to be confined and imprisoned in the common gaol at St. Pierre's, under circumstances of such great exposure and severity, as cannot be justified. It is said, that the law does not clothe the master with any authority to imprison the seamen for disobedience or misconduct in a common gaol in a foreign port; and that the imprisonment, if necessary or proper, must be on board of the ship. I am aware, that it has been doubted by very able judges, whether the law does authorize such an imprison-

ment on shore in a foreign port. My opinion, however, upon the most mature deliberation, is, that it does authorize it; but I am also of opinion, that the authority arises, and can be exercised only in cases of flagrant offences, where there is a positive necessity of removal of the party offending from the ship to some place of safety on shore. The authority is of a very delicate and summary nature, and is justified only by the same necessities, which clothe private persons in other cases with extraordinary powers. Cases may easily be conceived, where the authority may be indispensable for the safety of the ship, cargo, and crew. Suppose a mutiny in port, with an intent to murder the officers, or to embezzle the cargo; and the conspiracy be so extensive, that the mutineers cannot be suffered to remain on board, but at the imminent hazard of the lives of the officers, and the property on board. The master must have (as I think) a right, under such circumstances, to remove them from the ship; and to imprison them, as well for punishment as safety, if he does not choose (as he may) to dismiss them altogether from the employment. But in such a case, the imprisonment must be with the intent to take them again on board the ship for the voyage, or to bring them home; and not with the intent merely to punish them, and at the same time to dissolve their connexion with the ship. The master can punish only to promote good discipline, and compel obedience to lawful orders on board of the ship. He is not clothed with judicial authority to sentence seamen to punishment for their offences. The law has conceded that authority to the regular tribunals of the country, acting in the common forms of justice, and upon a trial of the facts by a jury. While, therefore, I admit, that a master may, in extreme cases, imprison a seaman in a common gaol in a foreign port, (for no such authority is pretended to exist in a domestic port,) I think the authority is confined to extreme cases; and cannot be justified, when a more moderate punishment on ship-board would be effectual and safe. The notion, so commonly entertained, that a master may, at his pleasure, for slight offences imprison his seamen in a foreign gaol, is utterly unfounded in law. It is well known, that there is in warm climates great danger to the healths and lives of seamen in these miserable and loathsome places; and a power to imprison them there is often a power of life or death. It is high time, that masters should understand, that they are criminally liable for such wanton abuses of authority. And if a seaman should lose his life by confinement and exposure in such a gaol through the instrumentality of the master, without justifiable cause, the master is responsible, as in other cases of homicide. One of the strongest reasons against the exercise of the authority is, that the seamen are thus put utterly out of the control and supervision of the master. It is his duty to watch over

them with parental attention, as long as they belong to the ship; and he has no right to delegate his authority or custody to gaolers and turnkeys in a foreign country.

Verdict, guilty.